SLIP OPINION

Cite as 2017 Ark. 59

# SUPREME COURT OF ARKANSAS

**No.** CV–16–435

| | |
|---|---|
| SAMUEL A. PERRONI<br><br>APPELLANT<br><br>V.<br><br>DAVID SACHAR, EXECUTIVE DIRECTOR OF THE ARKANSAS JUDICIAL DISCIPLINE AND DISABILITY COMMISSION AND THE ARKANSAS JUDICIAL DISCIPLINE AND DISABILITY COMMISSION<br><br>APPELLEES | **Opinion Delivered:** March 2, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV–12–2715]<br><br>HONORABLE MARY SPENCER MCGOWAN, JUDGE<br><br>APPEAL DISMISSED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Sam Perroni appeals an order of the Pulaski County Circuit Court granting a motion to dismiss filed by appellees David Sachar, Executive Director of the Arkansas Judicial Discipline and Disability Commission, and the Arkansas Judicial Discipline and Disability Commission (collectively the "Commission"). For reversal, Perroni argues that the circuit court should have retained subject-matter jurisdiction, that he had standing, and that the facts in the complaint should have been taken as true. We dismiss Perroni's appeal for lack of subject-matter jurisdiction.

## I. *Facts*

On January 10, 2011, Perroni filed a complaint with the Commission and its former executive director, David Stewart, against Circuit Judge Tim Fox. In his complaint, Perroni alleged that Judge Fox violated numerous provisions of the Arkansas Code of Judicial Conduct by (1) distributing partisan, political advertisements against an associate justice in

his race for the supreme court, (2) causing false docket information to be recorded on his court docket, (3) misrepresenting his availability for a hearing, (4) having an extramarital affair with his former law clerk, and (5) failing to recuse or disclose the relationship when his former law clerk or members of her law firm appeared before him. A three-member panel of the Commission investigated Perroni's judicial complaint against Judge Fox. On July 7, 2011, Perroni received a copy of a letter written by Stewart to Judge Fox stating that the Commission's investigation panel had reviewed and dismissed Perroni's complaint. On October 31, 2011, Perroni filed a lawsuit against the Commission pursuant to the Arkansas Freedom of Information Act, seeking the identities of the members of the Commission's panel that had investigated his judicial complaint against Judge Fox. The circuit court ordered the Commission to disclose the identities of the members of the investigative panel, and the executive director complied with the circuit court's order.

On December 9, 2013, Perroni filed a second complaint with the Commission, alleging that Judge Fox intentionally violated campaign-finance laws, the Arkansas Freedom of Information Act, and a Pulaski County Circuit Court case-assignment plan. Perroni also alleged that Judge Fox abused the prestige of his office to advance his personal interests, attempted to cover up a conflict of interest concerning his former law clerk, and acted in a manner that eroded public confidence in the integrity and impartiality of the judiciary. The Commission found no probable cause on the complaint filed against Judge Fox, and as a result, the Commission did not file formal charges against him. The Commission dismissed Perroni's second judicial complaint. Perroni later requested disclosure of the identities of

the members of the investigative panel that dismissed his second judicial complaint against Judge Fox. The executive director disclosed the names of those members.

Perroni then filed an original complaint, an amended complaint, and a second amended complaint against the Commission for declaratory judgment, injunctive relief, and mandamus in Pulaski County Circuit Court. In his second amended complaint, Perroni requested that the circuit court declare Arkansas Code Annotated section 16-10-404 (Repl. 2010 & Supp. 2015) unconstitutional and void; that Rules 8(C), (D), and (E) of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission concerning investigation panels exceeded the authority of the Supreme Court of Arkansas and the Commission, pursuant to Amendment 66(f) of the Arkansas Constitution; that the Commission's standard of "sufficient cause to proceed" with an investigation was unconstitutionally vague; and that the acts of the Commission's alternate-member investigation panel constituted a nullity. Perroni also requested the circuit court to issue a mandatory injunction and a writ of mandamus directing the Commission to investigate his complaints against Judge Fox as it had in similar cases naming other Arkansas judges.

The Commission moved to dismiss Perroni's second amended complaint, arguing that the circuit court lacked jurisdiction to review the Commission's decision because original jurisdiction lies with the supreme court; that the complaint failed to state a claim; that Perroni lacked standing; that the issue presented by Perroni was not ripe for judicial determination; that Perroni's complaint was barred by the doctrine of res judicata; that section 16-10-405 was constitutional as a matter of law; and that a writ of mandamus should not lie.

SLIP OPINION

On January 27, 2016, the circuit court entered an order granting the Commission's motion to dismiss for lack of subject-matter jurisdiction. The circuit court ruled that

> this court has no ability to grant the relief sought as the fundamental issue is that of jurisdiction. . . . There is no statutory scheme that provides for a review of the Commission's decisions by a circuit court. . . . [T]his court has determined that it does not have jurisdiction to decide this case.

From this order, Perroni timely filed his notice of appeal.

## II. *Subject-matter Jurisdiction*

On appeal, Perroni argues that the circuit court erred in dismissing Perroni's second amended complaint. Specifically, he contends that the circuit court had subject-matter jurisdiction, that he had standing to file suit, and that the facts stated in the complaint must be viewed by this court as true. The Commission responds that the circuit court lacked jurisdiction because original jurisdiction to review actions of the Commission lies exclusively with the supreme court.

The key issue is whether the circuit court had subject-matter jurisdiction over Perroni's claims. Subject-matter jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *Allen v. Cir. Ct. of Pulaski Cty.*, 2009 Ark. 167, 303 S.W.3d 70. It is well settled that subject-matter jurisdiction is a court's authority to hear and decide a particular type of case. *Edwards v. Edwards*, 2009 Ark. 580, 357 S.W.3d 445. A court obtains subject-matter jurisdiction under the Arkansas Constitution or by means of constitutionally authorized statutes or court rules. *Id.* An Arkansas court lacks subject-matter jurisdiction if it cannot hear a matter "under any circumstances" and is "wholly incompetent to grant the relief sought." *Id.* at 4, 357 S.W.3d at 448 (quoting *J.W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 352–53,

836 S.W.2d 853, 858 (1992)). We determine whether a court has subject–matter jurisdiction based on the pleadings. *Union Pac. R.R. Co. v. State ex rel. Faulkner Cty.*, 316 Ark. 609, 873 S.W.2d 805 (1994). Circuit courts have original jurisdiction of "all justiciable matters not otherwise assigned pursuant to" the constitution. Ark. Const. amend. 80 § 6(A); *Edwards v. Nelson*, 372 Ark. 300, 275 S.W.3d 158 (2008).

Perroni filed a declaratory-judgment action in circuit court. Under our Uniform Declaratory Judgments Act, "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Ark. Code Ann. § 16-111-101 (Repl. 2016). The Act itself does not confer subject-matter jurisdiction; thus, there must be an independent basis for the court's jurisdiction before it may render a declaratory judgment. *Bryant v. Picado*, 338 Ark. 227, 996 S.W.2d 17 (1999).

The subject of the case at bar involves a judicial-discipline matter between the Commission and Judge Fox. Judicial discipline and procedures defining that process are sui generis and unlike a typical administrative action that first must be reviewed in circuit court. *See, e.g.*, *Griffen v. Ark. Jud. Discipline & Disability Comm'n*, 368 Ark. 557, 247 S.W.3d 816 (2007). The supreme court is authorized to review judicial-discipline matters filed with the Commission, pursuant to Arkansas Constitution amendment 66, in accordance with Arkansas Code Annotated sections 16-10-401 through 16-10-411 (Repl. 2010 & Supp. 2015), and Rules 1 through 15 of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission.

Here, the circuit court determined that it lacked subject-matter jurisdiction to hear an appeal from the Commission. Pursuant to amendment 66 of the Arkansas Constitution, as well as sections 16-10-401 through 16-10-411 and the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission, a review of the Commission's decision lies exclusively with the supreme court. Notably, the judge—not the complainant—may appeal the findings of the Commission, *see* Ark. Jud. Discipline & Disability Comm'n R. 12(C), and a review of the Commission's action on a complaint, or failure to act, is reserved for this court on a petition for writ of certiorari. *See* Ark. Jud. Discipline & Disability Comm'n R. 12(H). Thus, we hold that the circuit court properly dismissed Perroni's complaint for lack of subject-matter jurisdiction. When a circuit court is without subject-matter jurisdiction, this court likewise is without jurisdiction to hear the appeal. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179. Accordingly, we dismiss Perroni's appeal for lack of subject-matter jurisdiction. Because we dismiss the appeal, we decline to address the remaining arguments on appeal.

Appeal dismissed.

Special Justice KANDICE BELL joins in this opinion.

Special Justice LAUREN HEIL joins in this opinion.

GOODSON, J., concurs in part; dissents in part.

HART, J., dissents.

BAKER and WOOD, JJ., not participating.

**COURTNEY HUDSON GOODSON, Justice, concurring in part and dissenting in part.** I concur with the majority's decision to dismiss appellant Samuel A. Perroni's

claim for injunctive relief and for a writ of mandamus directing the Arkansas Judicial Discipline and Disability Commission ("Commission") to investigate his complaints against Circuit Judge Timothy Fox. Indeed, the circuit court lacked subject-matter jurisdiction over this particular claim because amendment 66 to the Arkansas Constitution, Arkansas Code Annotated sections 16-10-401 through 16-10-411 (Repl. 2010 & Supp. 2015), and the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission provide that an appeal from the Commission's decision lies solely with this court.

I disagree, however, with the majority's dismissal of Perroni's declaratory-judgment claim. In his second amended complaint, Perroni requested a declaration that Arkansas Code Annotated section 16-10-405, which permits this court to adopt rules regarding Commission matters and proceedings, amounts to an unconstitutional delegation of authority. In addition, Perroni sought to have the circuit court declare that the provisions of Rule 8 of the Commission's Rules of Procedure violated amendment 66 to the Arkansas Constitution.

Arkansas Code Annotated section 16-111-101 (Repl. 2016) states that "[c]ourts of record within their respective jurisdictions shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Furthermore, "[c]ircuit courts have original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution." Ark. Code Ann. § 16-13-201 (Repl. 2010). As noted above, jurisdiction to review the Commission's decision lies exclusively with this court, not with the circuit court, pursuant to amendment 66. However, Perroni's claim for declaratory judgment was not an attempt to seek review of the Commission's decision with

respect to the complaints he had filed. Rather, it was a request for the circuit court to declare certain statutes and rules unconstitutional, a matter which the circuit court had the power to decide given that jurisdiction had not been otherwise assigned by our constitution. Thus, I would not dismiss Perroni's declaratory-judgment claim based on a lack of jurisdiction, and I dissent from this portion of the majority's opinion.

Instead, I would affirm based on the circuit court's alternative ruling that Perroni did not have standing to challenge the constitutionality of Arkansas Code Annotated section 16-10-405 and the Commission's Rules of Procedure under the circumstances in this case. The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. *McLane S., Inc. v. Ark. Tobacco Control Bd.*, 2010 Ark. 498, 375 S.W.3d 628.

Only a claimant who has a personal stake in the outcome of a controversy has standing. *Chubb Lloyds Ins. Co. v. Miller Cnty. Circuit Court*, 2010 Ark. 119, 361 S.W.3d 809; *Pulaski Cnty. v. Ark. Democrat-Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007). The Arkansas Declaratory Judgment Act authorizes a person "whose rights, status, or other legal relations are affected by a statute" to "obtain a declaration of rights, status, or other legal relations thereunder." Ark. Code Ann. § 16-111-104.

In *Andres v. First Arkansas Development Finance Corp.*, 230 Ark. 594, 606, 324 S.W.2d 97, 104 (1959), this court stated, "Our declaratory judgment act . . . was not intended to allow any question to be presented by any person: the matters must be justiciable." We have further stated that in order to obtain declaratory relief, the precedent facts or conditions generally held to be required include (1) a justiciable controversy; that is to say, a controversy

in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy; in other words, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination. *Cancun Cyber Café & Bus. Ctr., Inc. v. City of N. Little Rock*, 2012 Ark. 154. All four of these requirements must be met in order to have standing to seek declaratory relief. *Id.*

Here, it is clear that Perroni was not entitled to declaratory relief in this action against the Commission. Although he has asserted claims against a judge before the Commission, he has no interest in the resolution of the claim, and he has no right to compel the Commission to do anything beyond receiving his complaint. Also, he and the Commission do not have adverse interests. Even though Perroni opposes the Commission's resolution of his complaints, he and the Commission's interests are the same, which is to remedy judicial misconduct. The Ninth Circuit Court of Appeals has held that a district court properly determined that the plaintiff lacked standing to challenge the Commission on Judicial Conduct's alleged failure to consider his complaints against judges and justices of the State of Washington because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Carr v. Reed*, 316 Fed. App'x 588, 589 (9th Cir. 2006) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Accordingly, the circuit court did not err in concluding that Perroni lacks standing, and I would affirm its dismissal of his declaratory-judgment claim on this basis.

**JOSEPHINE LINKER HART, Justice, dissenting.** The majority has completely mischaracterized appellant's cause of action. This is not an appeal of a Judicial Discipline and Disability Commission (JDDC) ruling. Appellant's cause of action is a petition for declaratory judgment that asks the circuit court to declare whether JDDC's procedures comport with amendment 66 or the Arkansas Constitution.[1]

---

[1] Amendment 66 states

(a) Commission: Under the judicial power of the State, a Judicial Discipline and Disability Commission is established and shall be comprised of nine persons: three justices or judges, appointed by the Supreme Court; three licensed attorneys in good standing who are not justices or judges, one appointed by the Attorney General, one by the President of the Senate, and one by the Speaker of the House; and three members appointed by the Governor. The members appointed by the Governor shall not be justices or judges, retired justices or judges, or attorneys. Alternate members shall be selected and vacancies filled in the same manner.

(b) Discipline, Suspension, Leave, and Removal: The Commission may initiate, and shall receive and investigate, complaints concerning misconduct of all justices and judges, and requests and suggestions for leave or involuntary disability retirement. Any judge or justice may voluntarily request that the Commission recommend suspension because of pending disciplinary action or leave because of a mental or physical disability. Grounds for sanctions imposed by the Commission or recommendations made by the Commission shall be violations of the professional and ethical standards governing judicial officers, conviction of a felony, or physical or mental disability that prevents the proper performance of judicial duties. Grounds for suspension, leave, or removal from office shall be determined by legislative enactment.

(c) Discipline: If, after notice and hearing, the Commission by majority vote of the membership determines that grounds exist for the discipline of a judge or justice, it may reprimand or censure the judge or justice, who may appeal to the Supreme Court. The Commission may, if it determines that grounds exist, after notice and hearing, and by majority vote of the membership, recommend to the Supreme Court that a judge or justice be suspended, with or without pay, or be removed, and the Supreme court, en banc, may take such action. Under this amendment, a judge who also has executive or legislative responsibilities shall be suspended or removed only from judicial duties. In any hearing involving a Supreme Court justice, all Supreme Court justices shall be disqualified from participation.

On June 6, 2012, appellant filed a petition in the Pulaski County Circuit Court styled "Complaint for Declaratory Judgment and Injunctive Relief." Our declaratory judgment statute states:

Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree. Ark. Code. Ann. § 16-111-101. Furthermore, our declaratory-judgment statute must be liberally construed. In section 16-111-112, the General Assembly stated, "This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

---

(d) Leave and Retirement: If, after notice and hearing, the Commission by majority vote of the membership determines that a judge or justice is unable because of physical or mental disability to perform the duties of office, the Commission may recommend to the Supreme Court that the judge or justice be granted leave with pay or be retired, and the Supreme Court, en banc, may take such action. A judge or justice retired by the Supreme Court shall be considered to have retired voluntarily as provided by law.

(e) Vacancies: Vacancies created by suspension, the granting of leave or the removal of a judge or justice, or vacancies created by disqualification of justices, shall be filled as provided by law.

(f) Rules: The Supreme Court shall make procedural rules implementing this amendment and setting the length of terms on the Commission.

(g) Cumulative Nature: This amendment is alternative to, and cumulative with, impeachment and address authorized by this Constitution.

The petition asserted that the circuit court had jurisdiction to hear the petition pursuant to Arkansas Code Annotated section 16-13-201(a), which states, "Circuit courts shall have original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution." Further, the petition asked the circuit court to declare certain statutes and rules promulgated by the Arkansas Supreme Court with regard to the JDDC unconstitutional under amendment 66.

Appellant asserted that amendment 66 mandates that the complaints he filed with the JDDC against Circuit Judge Timothy D. Fox be investigated by the nine-member JDDC and that his complaints had not been investigated. The second amended petition prayed that the circuit court (a) declare unconstitutional portions of Arkansas Code Annotated section 16-10-404; (b) declare unconstitutional Rule 8(C),( D), and (E) of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission;[2] (c) declare that

---

[2] In pertinent part, Rule 8 states:

C. Investigation of Complaints. All complaints not summarily dismissed by the Executive Director shall then be presented to an Investigation Panel. The Investigation Panel shall dismiss all complaints for which sufficient cause to proceed is not found by that Panel. If the complaint is not dismissed, the Panel shall then direct the staff to make a prompt, discreet, and confidential investigation. In no instance may the staff undertake any investigation or make any contact with anyone other than the complainant and the judge unless authorized to do so by the Investigation Panel. If authorized by the Investigation Panel, subpoenas may be used to obtain documents, procure witness statements, and collect other evidence requested by the Panel. Upon completion, the Panel shall review the findings from the investigation. The Panel shall dismiss all complaints for which sufficient cause to proceed is not found. A report as to matters so dismissed shall be furnished to the Commission at its next meeting. The complainant and the judge shall be informed in writing of the dismissal.

D. Mandatory Notice to the Judge. If a complaint, or any portion of it, is not dismissed by the Investigation Panel following the discreet and confidential investigation, then the Panel shall notify the judge in writing immediately of those portions of the

the creation of "Investigation Panels" exceeds the statutory authority of the JDDC and the

Arkansas Supreme Court under section 16-10-404 and amendment 66(f); (d) declare that

the standard of "sufficient cause to proceed" was unconstitutionally vague; (e) declare the

actions of the investigation panel void with regard to appellant's complaint; and (f) issue a

mandatory injunction directing the JDDC to investigate his complaint against Judge Fox as

set forth in amendment 66(a) and (b) and the constitutional portions of Arkansas Code

Annotated section 16-10-404.

I am mindful that the petition, with exhibits, exceeded 200 pages. The petition

described the misdeeds allegedly committed by Judge Fox and asserted that similar

transgressions involving other judges had been found by the JDDC to violate the Arkansas

Code of Judicial Conduct. These violations resulted in sanctions against those judges.

Pleading further, the petition asserted that appellant received correspondence stating that an

---

complaint that the Panel has concluded warrant further examination and attention. The judge shall receive the complaint, or any portion of the complaint that is not dismissed, along with any information prepared by or for the Panel or Staff to enable the judge to adequately respond to the issues in the complaint. The judge shall be invited to respond to each of the issues from the complaint that the Panel has identified as possible violations of the Arkansas Code of Judicial Conduct. The time for the judge to respond shall be within 30 days unless shortened or enlarged by the Investigation Panel for good cause.

E. Dismissal or Formal Statement of Allegations. The Investigation Panel may dismiss the complaint with notice to the complainant and the judge, upon a finding of probable cause that the judge violated the Code of Judicial Conduct, it may direct that a formal statement of allegations, citing specific provisions of the Code of Judicial Conduct alleged to have been violated and the specific facts offered in support of the alleged violation(s), be prepared and served on the responding judge along with all materials prepared by the Panel or Staff. Service may be by any means provided for service of process in the Arkansas Rules of Civil Procedure.

"investigation panel" did not find "any evidence of judicial misconduct, wrong-doing, or incapacity within the Commission's jurisdiction." It further had determined that there was "insufficient cause to proceed" and dismissed the complaint. Attempts by appellant to learn the identity of the investigation panel were resisted by the JDDC. However, a successful lawsuit by appellant under the Arkansas Freedom of Information Act (FOI) resulted in disclosure that the investigation panel was composed of District Judge Steve Routon, Judy Henry, and Mary Bassett.[3]

I acknowledge that, in the petition, there is an undertone of dissatisfaction with the disposition of appellant's complaints. However, this does not turn appellant's declaratory-judgment petition into an appeal of the JDDC's decision. It is instead a product of the required fact-pleading that is essential to establishing that appellant was aggrieved by the JDDC's handling of appellant's complaints.

In reviewing the circuit court's dismissal of appellant's petition, we are obligated under our standard of review to treat the facts alleged in the petition as true and view them in the light most favorable to the party who filed the complaint. *Ark. Dep't of Human Servs v. Fort Smith Sch. Dist.*, 2015 Ark. 315, 455 S.W.3d 294. We are also required to consider and resolve all reasonable inferences in favor of the petition. *Id*. Furthermore, we must liberally construe all pleadings. *Id*. The majority failed to properly review this case.

The issue before this court is a narrow one. Was appellant's complaint actually an attempt to appeal a ruling of the JDDC, as the appellees assert and as the circuit court found,

---

[3]I want to be clear, despite the fact that current JDDC Executive Director, David Sachar, had been substituted as a named defendant in this case, the activity that appellant complains of took place during the tenure of Mr. Sachar's predecessor, David Stewart.

or was it a petition for declaratory judgment challenging the validity of certain statutes and Arkansas Supreme Court Rules that purport to establish procedures to implement amendment 66? Rather than upholding the court's obligation to interpret appellant's pleadings so as to afford him relief if possible, the majority construed appellant's pleading to affirm the circuit court's summary dismissal of his petition.

Amendment 66 was initiated by a joint resolution of the legislature and approved by the voters in 1988. It created not only a mechanism to discipline the state's judiciary but also recognized a textual constitutional right of every citizen to have his or her complaint against a judge received, investigated, and ruled on by a particular nine-member group of Arkansas citizens known as the JDDC. The majority does not acknowledge that the processes specified by amendment 66 applies not only to the judges but also to every citizen who observes what appears to be a breach of judicial ethics. As noted previously, amendment 66 requires that the JDDC "shall receive and investigate, complaints concerning misconduct of all justices and judges." Thus, the plain wording of amendment 66 contemplates that every person who believes that a member of the judiciary has engaged in misconduct has the right to file a complaint with the JDDC and have it handled in the manner provided for by the constitution. Today's decision denies appellant this constitutional right.

It is true that amendment 66 empowers the Arkansas supreme court to "make procedural rules implementing this amendment." However, the rules of JDDC "procedure" that appellant challenges created a full-time executive director, a position never contemplated in the plain wording of amendment 66. The executive director has been

given unilateral authority to dismiss complaints without submitting them to the JDDC. Furthermore, under these "procedures," investigation is not performed by the full commission, as specified by amendment 66. Investigation is instead entrusted to three-member ad hoc groups, apparently composed of "alternates" who are not actual members of the commission. The constitutionality of the rules implementing amendment 66 is a question that can and should be brought by the Arkansas citizen that granted this court the authority to establish these procedures. Today's majority opinion places decisions by the executive director and ad hoc panels beyond this court's power of review.

The majority has also immunized the executive director and the JDDC from public scrutiny, no matter how far their decisions may stray from our constitutional mandate. This gives the JDDC and the unelected executive director unique status among public officials in Arkansas. In *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 302, 954 S.W.2d 221, 224 (1997) (quoting *Jensen v. Radio Broad. Co., Inc.*, 208 Ark. 517, 520, 186 S.W.2d 931, 932 (1945)), this court stated,

There is no doubt but that equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are ultra vires and beyond the scope of their authority, or which constitute a violation of their official duty, whenever the execution of such acts would cause irreparable injury to, or destroy rights and privileges of, the complainant, which are cognizable in equity, and for the protection of which we would have no adequate remedy at law.

SLIP OPINION

The majority has not justified the JDDC's and its executive director's special status, and more importantly, how it comports with the plain wording of amendment 66.

When the ethical conduct of its judiciary is concerned, the citizens of Arkansas deserve to have this court honor the constitutional amendment that they voted for. At a minimum, this means that one nine-member body *must* receive, investigate, and decide the merits of each complaint filed against a member of this state's judiciary. When a petition asserts that the procedures employed by the JDDC contravenes the explicit language of the Arkansas Constitution, that petition must get a full and fair hearing in a declaratory-judgment action. Furthermore, when public officials are not fulfilling their duties, every citizen in this state has the right to seek injunctive relief. *Wilson*, *supra*. I therefore respectfully dissent.

**ROBIN F. WYNNE, Justice, dissenting.** I respectfully dissent because I disagree with the majority's conclusion that the circuit court lacked subject-matter jurisdiction over appellant Sam Perroni's complaint. In my view, the circuit court did have jurisdiction over appellant's complaint to the extent it sought declaratory judgment. This court has original and exclusive jurisdiction under Amendment 66 to review appeals by judges who have been reprimanded by the Arkansas Judicial Discipline and Disability Commission (JDDC) and to take action on recommendations by the JDDC that a judge be suspended or removed from office; this court also has the power to prescribe procedural rules for the JDDC. However, this case does not fall within this court's exclusive jurisdiction. Therefore, the circuit court had original jurisdiction over this matter. *See* Amendment 80, section 6(A) ("Circuit Courts are established as the trial courts of

original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution"; Ark. Code Ann. § 16-111-101 (Repl. 2016) (declaratory judgments). While he clearly disagreed with the Commission's dismissal of his complaint, appellant's complaint before the circuit court did not challenge the Commission's decision itself, but rather sought declaratory relief regarding the constitutionality of a statute and certain procedural rules, and a declaration that the Commission's standard of "sufficient cause to proceed" was unconstitutionally vague and that acts of the alternate-member panel constituted a nullity. The effect of a ruling in appellant's favor on these claims would be that his complaint would be once again before the Commission for its review.[1]

Furthermore, I disagree with the circuit court's finding that appellant lacked standing. A litigant has standing to challenge the constitutionality of a statute if the law is unconstitutional as applied to that particular litigant. *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 14–15, 991 S.W.2d 536, 539 (1999). The general rule is that one must have suffered injury or belong to a class that is prejudiced in order to have standing to challenge the validity of a law. *Id*. Stated differently, plaintiffs must show that the questioned act has a prejudicial impact on them. *Id*. Appellant, like any citizen and particularly any member of the bar, is prejudiced by actions of the JDDC that contravene the Arkansas Constitution.

I would reverse and remand for further proceedings.

*Timothy O. Dudley*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Colin R. Jorgensen*, Ass't Att'y Gen., for appellee.

---

[1] Although written in the context of a petition for certiorari seeking to have this court review the disposition of a complaint filed with the JDDC, I note the following astute observation: "I do not believe the public or the legislature would have been quite so disposed to the adoption of Amendment 66 had it been contemplated that *only* members of the judiciary could petition for a review of the actions of the Commission." *Duty v. Arkansas Judicial Discipline & Disability Comm'n*, 304 Ark. 294, 801 S.W.2d 46, 47 (1990) (Hayes, J., dissenting).